UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL RIVERS ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) Case No. 1:24-cv-510 (ABJ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Defendant. ) <br> ) | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Plaintiff, Michael Rivers, through undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b), submits this opposition to the Defendant's Motion to Dismiss this matter for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim.

The Complaint in this case sets out a straightforward claim for negligence against the United States for the Attorney General's failure to ensure that attorneys holding themselves out as representatives of the United States in Plaintiff's criminal prosecution in fact were duly authorized to do so, which they were not. This negligent oversight directly harmed Plaintiff, and this lawsuit properly seeks redress for those injuries.

## FACTUAL BACKGROUND

In March 2013, the United States purported to prosecute Plaintiff for wire fraud and other charges in federal district court in the Middle District of Florida. Compl. ¶ 10.[1] As the Complaint alleges, the two individuals who held themselves out as Assistant United States Attorneys in that matter—Daniel Eckart and Christopher LaForgia—were not duly authorized to represent the United States in those proceedings because they lacked the necessary written

---

[1] References to the Complaint (ECF No. 1) appear as "Compl. ¶ [#]."

authorization from the Attorney General or his duly authorized representative, Compl. ¶¶ 8, 12, 13, which in turn divested the District Court of jurisdiction to hear the matter in the first instance. *Id.* ¶ 24.  The Complaint further alleges that the Attorney General's authorization was required to be on a specifically designated form that was signed by the Attorney General or his duly authorized representative, *id.* ¶ 8, which is distinct from the SF-61 oath of office form, or any other boilerplate form associated with an individual's routine onboarding as a federal employee. *Id.* ¶ 9.

As a result of the Attorney General's negligence in allowing Eckart and LaForgia to prosecute a case they were not duly authorized to appear in and over which the District Court lacked jurisdiction, Plaintiff was prosecuted and convicted and suffered injuries as a result. *Id.* ¶¶ 45-47.  This lawsuit follows.

## LEGAL STANDARD

To survive a motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "the plaintiff bears the burden of establishing that the court has jurisdiction." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F.Supp.2d 9, 13 (D.D.C. 2001). Nevertheless, the 12(b)(1) analysis still requires that the Court "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Schmidt v. U.S. Capitol Police Bd.*, 826 F.Supp.2d 59, 65 (D.D.C. 2011) (internal quotations and citations omitted).

"To prevail on a motion to dismiss for failure to state a claim [under Fed. R. Civ. P. 12(b)(6)], a plaintiff need only provide a short and plain statement of the claim that gives the defendant fair notice of what the claim is and the grounds upon which it rests." *Beraki v. Crescent Hotels and Resorts*, 2022 WL 1014651, at * 3 (D.D.C. Apr. 5, 2022) (cleaned up).  A

motion to dismiss "does not test a plaintiff's likelihood of success on the merits, but rather tests the legal sufficiency of a complaint by asking whether the plaintiff has properly stated a claim for which relief can be granted." *Id.* (quotations and citations omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege facts that, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In considering a motion to dismiss, courts "must construe the complaint in the light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Wharf, Inc. v. District of Columbia*, 133 F.Supp. 3d 29, 33 (D.D.C. 2015) (citations omitted). To be sure, "[a] court must treat the complaint's factual allegations as true, even if doubtful in fact." *Nanko Shipping, USA v. Alco, Inc.*, 107 F.Supp.3d 174, 179 (D.D.C. 2015) (quotations and citations omitted). A motion to dismiss is therefore appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Greene v. England*, 2004 WL 326716, at *1 (D.D.C. Feb. 9, 2004) (quotations and citations omitted).

The Complaint here sufficiently establishes subject-matter jurisdiction and sufficiently alleges a cause of action for negligence against Defendant. Therefore, the Court should deny Defendant's motion to dismiss.

## ARGUMENT

I.  **PLAINTIFF'S NEGLIGENCE CLAIM IS PROPER UNDER THE FEDERAL TORT CLAIMS ACT**

The Federal Tort Claims Act ("FTCA") permits actions against the United States for money damages for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within

the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Here, Plaintiff clearly alleges a claim for Defendant's "negligent or wrongful act or omission" and clearly has pled "injury or loss of property, or personal injury" caused by that negligence. Thus, as an initial matter, Plaintiff has properly availed himself of the FTCA framework in bringing this lawsuit.

### a. The complaint does not violate the intentional-torts exception to the Federal Tort Claims Act.

The FTCA does contain a number of exceptions, including for acts "arising out of" certain intentional torts. 28 U.S.C. § 2680(h). Among these intentional torts are "abuse of process" and "malicious prosecution." *Id.* In its Motion to Dismiss, Defendant contends that Plaintiff's negligence claim "arises out of the alleged malicious prosecution and abuse of process," and thus is barred under 28 U.S.C. § 2680(h). Defendant's Motion to Dismiss ("Def. Mot.") 4. Not so.

Under District of Columbia law, "abuse of process" occurs when "process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Houlahan v. World Wide Ass'n of Specialty Programs and Schools*, 677 F.Supp.2d 195, 199 (D.D.C. 2010) (internal citations and quotations omitted). An essential element of abuse of process claims is an "ulterior motive." *Id.* That is, the moving party must demonstrate "a perversion of the judicial process and achievement of some end not contemplated in the regular prosecution of the charge." *Rockwell Capital Partners, Inc. v. CD International Enterprises, Inc.*, 311 F.Supp.3d 52, 55 (D.D.C. 2018) (internal quotations and citations omitted).

Similarly, the tort of malicious prosecution requires "(i) a criminal proceeding instituted or continued by the defendant against the plaintiff; (ii) termination of the proceeding in favor of the accused; (iii) absence of probable cause for the proceedings; and (iv) malice, or primary purpose in instituting the proceeding other than that of bringing an offender to justice." *Amobi v. District of Columbia Dept. of Corrections*, 755 F.3d 980, 992 (D.C. Cir. 2014) (internal quotations and citations omitted). As is the case for the tort of abuse of process, the gravamen of a malicious prosecution claim is a nefarious motive and a deliberate act to subvert the normal process.

Here, the Complaint does not plead either intentional tort explicitly, nor is it grounded in intentionally nefarious conduct. The Complaint instead alleges that the Attorney General was negligent in allowing Eckart and LaForgia to hold themselves out as Assistant United States Attorneys when they were not properly authorized to do so, and that claim plainly does not arise out of abuse of process or malicious prosecution. Plaintiff does not contend that Defendant acted with an "ulterior motive" to pervert the judicial system, *Houlahan, supra*, that Defendant compelled Plaintiff to do some "collateral thing which he could not legally and regularly be required to do," *id.*, or that the criminal proceedings against Plaintiff were instituted for some reason other than to "bring[] an offender to justice." *Amobi, supra*. Rather, the Complaint alleges simply that the attorneys prosecuting Plaintiff's case were not authorized to represent the United States in a criminal proceeding—irrespective of their motives and intentions—and that the Attorney General was negligent in permitting such a scenario to occur.

As discussed more fully below, the core of the Complaint is the Attorney General's negligence in allowing his employees to hold themselves out as representatives of the United States when they were not duly authorized to do so, even if those attorneys otherwise conducted

themselves with integrity and procedural soundness. Accordingly, the Complaint sufficiently and properly alleges a claim for negligence that is not barred by the intentional-torts exception to the FTCA.

### b. The private analogue of negligent supervision applies here.

In the same vein, Defendant also asserts that Plaintiff's claim must fail because there is no private analogue for the allegations in the Complaint, and thus sovereign immunity has not been waived under the FTCA. Def. Mot. 5. But Plaintiff's negligence claim comfortably falls within the waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1) because there is, in fact, an applicable private analogue that would govern if the United States were a private person in the District of Columbia: the tort of negligent supervision.

"As with the more general tort of negligence, negligent supervision occurs when the employer breaches a duty of care which proximately results in injury to the plaintiff." *Islar v. Whole Foods Market Group, Inc.*, 217 F.Supp.3d 261, 265 (D.D.C. 2016) (internal quotations and citations omitted). More specifically, the plaintiff in such an action must establish (i) the employee behaved in a dangerous or otherwise incompetent manner; (ii) the employer knew or should have known its employee's dangerous or incompetent behavior; and (iii) the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee. *Busby v. Capital One, N.A.*, 772 F.Supp.2d 268, 284 (D.D.C. 2011) (cleaned up); *see also Islar, supra*, 217 F.Supp.3d at 265 (same). Importantly here, "[t]he cause of action for negligent supervision, derived from [the] standard negligence tort, recognizes that an employer owes specific duties to third persons based on the conduct of its employees." *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 575 (D.C. 2007). Indeed, "[o]ne dealing with the public is bound to use

reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee." *Id*.

Here, the Complaint asserts that Eckhart and LaForgia were "unfit" employees, *id.*, because they were engaged in the "otherwise incompetent" behavior of holding themselves out as representatives of the United States when they were not in fact authorized to do so. *Busby, supra*. Further, the Complaint alleges that the Attorney General was negligent in its supervision duties by allowing Eckhart and LaForgia to operate in such an unfit and incompetent manner. *See* Compl. ¶¶ 43-47. In so doing, the Attorney General breached his duty of care to Plaintiff—that is, his duty to ensure Plaintiff was prosecuted by duly authorized representatives of the United States—and Plaintiff suffered injury as a result.

Given the existence of a private analogue, the Complaint properly alleges a negligent act for which sovereign immunity has been waived because the United States would be liable if it were a private person in accordance with the laws of the District of Columbia.

## II. THE COMPLAINT SUFFICIENTLY ALLEGES A CLAIM FOR NEGLIGENCE AS A MATTER OF LAW

Failing to establish that the Court lacks subject-matter jurisdiction over this case, Defendant next challenges the Complaint on the merits, asserting that it fails to state a claim as a matter of law because the Complaint, as stated, cannot establish that Defendant breached a duty of care to Plaintiff. This approach also falls short.

In support of this argument, Defendant simply offers a counternarrative to the Complaint, relying on an 11th Circuit case that purports to explain the authorization process for Assistant

United States Attorneys, Def. Mot. 6-7,[2] as well as two documents—the SF-50 and SF-61 (*see* ECF Nos. 11-1 and 11-2)—that Defendant offers as extrinsic evidence of Eckhart and LaForgia's proper authorization to prosecute Plaintiff's criminal case. Although the Court is required at this stage to accept as true all well-pled allegations in the Complaint, Defendant essentially asks the Court to instead accept its own set of facts that it believes undercuts Plaintiff's well-pled allegations. The Court should reject this invitation.

As an initial matter, "[a] motion to dismiss bolstered by extrinsic evidence generally must be converted into a motion for summary judgment." *Bautista-Rosario v. Mnuchin*, 568 F.Supp.3d 1, 9 (D.D.C. 2021). Before conversion, however, "the adverse party must be afforded the procedural protections of Rule 56, including a reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Paley v. Estate of Ogus*, 20 F.Supp.2d 83, 89 (D.D.C. 1998). Thus, if the Court does consider the documents Defendant attached to its Motion to Dismiss, it should convert the motion to a motion for summary judgment, and afford Plaintiff the opportunity to properly develop the factual record through discovery.

However, even assuming *arguendo* Defendant's exhibits are properly before the Court for the reasons Defendant cites, *see* Def. Mot. 7 n.2, these forms do not rebut the well-pled allegations in the Complaint that there exist *other* documents besides the SF-50 and SF-61 that were necessary to effectuate Eckart and LaForgia's appointments as Assistant United States Attorneys—namely, "specially designated form[s]" that the "Attorney General or his duly authorized representative must sign." Compl. ¶ 8. The Complaint further alleges that these

---

[2] Defendant thus concedes that there is, in fact, *some* authorization process that must take place before an attorney may hold themselves out as a representative of the United States in a criminal prosecution.

authorization forms are distinct from the SF-61 and "other boilerplate forms," *id* ¶ 9,[3] which would include the SF-50.

Defendant's references to the SF-50 and SF-61 do nothing to undermine the Complaint's well-pled allegations. Indeed, the SF-50 (ECF No. 11-1), which Defendant cites as the allegedly operative appointment document because it contains a reference to 28 U.S.C. § 542 (Def. Mot. 7), does not even appear to track Defendant's own explanation of the chain of authority: although Defendant contends that the appointment power ultimately has been delegated to the Director of the Office of Attorney Recruitment and Management, Def. Mot. 7, Eckhart's SF-50 is signed by an unidentified "Personnel Officer" and LaForgia's is signed by an unidentified "Human Resources Officer," ECF No. 11-1, neither of whom are obviously acting under authority of the Director of the Office of Attorney Recruitment and Management, as Defendant suggests should be the case. Def. Mot. 7.[4]

More to the point, the Court cannot resolve these types of factual disputes at this time, as "[g]enuine disputes cannot be decided at the motion to dismiss stage." *Harris v. Bowser*, 369 F.Supp.3d 93, 104 (D.D.C. 2019); *Richards v. Gelsomino*, 240 F.Supp.3d 173, 179 (D.D.C. 2017) (same). At best for Defendant, the parties simply disagree as to the proper procedure Defendant was required to follow in authorizing Eckart and LaForgia to serve as Assistant United States Attorneys, or in the alternative, as to whether the procedure Defendant cites was in fact followed here. This type of factual dispute is inappropriate at this stage.

---

[3] The Complaint clearly acknowledges the Attorney General's ability to delegate the authority to authorize Assistant United States Attorneys. *See* Compl. ¶ 8. Therefore, Defendant's contention that "Plaintiff bases his entire negligence claim on the misperception that … the Attorney General himself breached a duty" is simply without merit.

[4] Through Plaintiff's own research, it actually appears that there are *two* authorization documents—in the form of appointment letters—the Attorney General or his duly authorized representative must sign, which are separate and distinct from the SF-50.

Accordingly, the Court should decline to engage with Defendant's counternarrative and instead accept as true the well-pled allegations in the Complaint, which assert that Eckart and LaForgia were not properly authorized with the necessary documentation to represent the United States in Plaintiff's criminal proceedings, and that the Attorney General was therefore negligent in allowing them to prosecute Plaintiff.

### III. *HECK v. HUMPHREY* SHOULD NOT BAR PLAINTIFF'S CLAIM BECAUSE THE DISTRICT COURT NEVER HAD JURISDICTION OVER PLAINTIFF'S CRIMINAL PROSECUTION

Finally, Defendant asserts that, if nothing else, Plaintiff's claim is barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), because "[Plaintiff] cannot challenge the validity of his conviction or raise claims that imply the invalidity of his conviction through a common law tort action." Def. Mot. 8 (citing *Heck, supra*). As discussed below, *Heck* should not apply to the unique circumstances here.

In *Heck*, the Supreme Court considered whether a state inmate could bring a civil suit for damages under 42 U.S.C. § 1983 against state prosecutors and police officials without first exhausting his state habeas remedies pursuant to 28 U.S.C. § 2254. In that case, the plaintiff argued that the state officials had violated his rights in the criminal proceedings by conducting a knowingly unlawful investigation; destroying exculpatory evidence; and causing an illegal identification procedure to be used at his trial. *Heck, supra*, 512 U.S. at 479. In affirming the dismissal of plaintiff's civil claims, the Supreme Court held that

> [i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486-87.

Important variables distinguish *Heck* from the instant case.  As an initial matter, the Complaint here—which relates to a federal, not state, criminal conviction—is grounded in common law negligence, and not in 42 U.S.C. §1983, nor does it involve the intersection of § 1983 and 28 U.S.C. § 2254 (the state habeas statute), as was the case in *Heck*.  *See Heck, supra*, 512 U.S. at 480.

More importantly, the entire premise of the lawsuit in *Heck* was that the state actors had engaged in unconstitutional behavior that, if true, would have undermined criminal proceedings that otherwise were properly before the trial court.  In other words, the plaintiff's lawsuit in *Heck* simply challenged *the manner* in which the criminal proceedings were conducted in asserting certain violations of his civil rights, but said nothing of the validity of the proceedings themselves.  *See id.* at 478-79.  To the extent the rules of criminal procedure might have dictated that the underlying criminal conviction in that case be vacated or reversed were Plaintiff to succeed in his civil suit, the Supreme Court simply said the plaintiff had to first make that argument to the trial court under state habeas procedures.

Here, the premise is markedly different.  As the Complaint alleges, the District Court that oversaw Plaintiff's criminal case never had jurisdiction in the first instance because Eckart and LaForgia were not properly authorized to represent the United States in that action.  Compl. ¶ 13.  Indeed, a criminal prosecution conducted in the name of the United States by attorneys who are not properly authorized divests the trial court of jurisdiction to preside over the matter, rendering the case a nullity from inception.  *See U.S. v. Providence Journal Co.*, 485 U.S. 693, 708 (1988) ("Absent a proper representative of the Government as a petition in this criminal prosecution, jurisdiction is lacking…").

In this regard, the instant lawsuit does not operate as a collateral attack on the underlying criminal conviction in the way the lawsuit in *Heck* did because the criminal proceedings here were never valid to begin with.[5]  Instead, the Complaint here asserts that the circumstances giving rise to the divesting of jurisdiction from the trial court were caused by the Attorney General's negligence, for which Defendant can and should be held liable under the FTCA.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.

Dated: July 19, 2024

Respectfully submitted,

*Philip Andonian*
─────────────────────────
CALEBANDONIAN PLLC
Philip Andonian (D.C. Bar No. 490792)
Joseph Caleb (D.C. Bar No. 495383)
1100 H Street, N.W. – Ste. 315
Washington, D.C. 20005
Tel: (202) 953-9850
Email:  phil@calebandonian.com
            joe@calebandonian.com

*Attorneys for Plaintiff*

---

[5] Defendant's reliance on *Trupei v. U.S.,* 304 Fed.Appx. 776 (11th Cir. 2008) (*see* Def. Mot. 8) does not add anything to the analysis.  That case—which is not controlling precedent in this jurisdiction—simply applied the rationale of *Heck* to a *Bivens* action, which the Complaint before this Court does not raise.  It is also not clear that the *Trupei* court specifically considered the authorization issue Plaintiff raises here in its analysis of *Heck*; indeed, the plaintiff in *Trupei* had also alleged that the particular individuals in that case had introduced false testimony before the grand jury, which was also part of the *Bivens* claim.  *Trupei, supra*, 304 Fed.Appx. at 784.

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2024, I served the foregoing Opposition to Defendant's Motion to Dismiss on counsel of record for Defendant via the Court's ECF system and via electronic mail at jared.littman@usdoj.gov.

_/s/ Philip Andonian_
Philip Andonian